E-FILED
Thursday, 09 January, 2020  08:33:05 AM
Clerk, U.S. District Court, ILCD

AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A Cellular Phone carrying a phone number of<br>309-241-8654, and an ESN of 089568154302427010. | )<br>)<br>)<br>)<br>) | Case No. 20-MJ- 6003 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 USC 2251 | Sexual Exploitation of a Minor |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/Scott Gamboe

_____
*Applicant's signature*

Scott Gamboe, SFO, United States Secret Service
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____Telephone and email_____ *(specify reliable electronic means)*.

s/Jonathan E. Hawley

Date: _____01/08/2020_____

_____
*Judge's signature*

City and state: _____

Jonathan E. Hawley, United States Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

I, Special Federal Officer Scott Gamboe, having been duly sworn, state the following:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a detective with the Peoria County Sheriff's Department, located in Peoria, Illinois and have been employed there from June 1998 to present. I am also a Special Federal Officer through the sponsorship of the United States Secret Service (USSS). I am a member of the United States Attorney's Office Central Illinois Cyber Crime Unit based in Peoria, Illinois.  I have received extensive training in criminal investigations, computer crime investigations, computer and electronic device forensic exams, identity theft, fraud, and child pornography investigations. I have conducted numerous investigations, state and federal, involving computer crimes, identity theft, fraud, and child pornography resulting in arrests and seizures. I have also been involved in the execution of numerous search warrants.  In addition, I am an EnCE certified computer forensic examiner and a CCPA certified mobile device examiner. I hold a BA in Criminal Justice from the University Of Illinois – Springfield.

2.  As a Special Federal Officer, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.  During such investigations, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.  I have been involved in numerous child pornography investigations

1

and am very familiar with the tactics used by child pornography offenders who collect

child pornographic material and those who seek to exploit children.

      3.     I make this affidavit in support of an application for the issuance of a

search warrant to seize and search a cellular telephone, specifically a cellular phone

carrying a phone number of 309-241-8654, and an Electronic Serial Number (ESN) of

089568154302427010. (SUBJECT DEVICE described in Attachment A). This device is

under the dominion and control of Verlyn Williams, residing at 60 Rainbow Drive in

Pekin, Illinois, which is within the Central District of Illinois. I request authority to

search the SUBJECT DEVICE to seize the data contained therein, and to search that data

for items specified in ATTACHMENT B (which is incorporated herein by reference)

which may be found, and to seize all items listed in ATTACHMENT B as contraband,

evidence, fruits, and instrumentalities of a crime.

          a.  I have probable cause to believe that contraband, evidence, fruits, and

              instrumentalities, or property designed for use in committing a crime,

              namely violations of 18 U.S.C. § 2252A(a)(5)(B) (possession of child

              pornography) and 18 U.S.C. § 2251 (sexual exploitation of a minor) are

              located within the SUBJECT DEVICE. I submit this application and

              affidavit in support of a search warrant authorizing a search of the

              entirety of the data contained within the SUBJECT DEVICE.

      4.     This affidavit is based on information I have gained from my

investigation, as well as information provided by other law enforcement agents and

others involved in this and other investigations. Because I am submitting this affidavit for the limited purpose of securing the requested search warrant, I have not included each and every fact known to me concerning this investigation.  Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband, evidence, fruits and/or instrumentalities of violations of, or property designed for use in violating 18 U.S.C. §§ 2252A(a)(5)(B) and 18 U.S.C. § 2251, are located within the SUBJECT DEVICE.

**DEFINITIONS**

5.      The following definitions, inclusive of all definitions contained in 18 U.S.C. § 2256, apply to this affidavit and Attachment B:

  a.   "Computer" refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device."  18 U.S.C.  § 1030(e)(1).

  b.   "Computer hardware" consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including, but not limited to, central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, and other memory storage devices); peripheral input/output devices (including, but not limited to, keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

3

c.  "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

d.  "Computer-related documentation" consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

e.  "Computer software" is digital information that can be interpreted by a computer and any of its related components to direct the way it works. It commonly includes programs to run operating systems, applications, and utilities.

f.  "Internet Protocol Address" or "IP Address," as used herein, refers to a unique number used by a computer to access the Internet.  IP Addresses can be "dynamic," meaning that the Internet service provider assigns a different unique number to a computer every time it accesses the Internet.  IP Addresses might also be "static," if an Internet service provider assigns a user's computer a particular IP Address that is used each time the computer accesses the Internet. IP Addresses are registered to specific individuals or entities, such as an Internet service provider. When a subscriber of an Internet service provider wishes to access the Internet via their service, the Internet service provider will assign that account an IP Address which identifies that account holder on the Internet. By providing the Internet service provider with the dates, times and IP Addresses which a suspect used to access the Internet, the Internet service provider will be

4

able to provide the identifying information for the account holder who was assigned that specific IP Address, at that date and time, if the records still exist on their system.

g. "Internet service providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet.  ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment.

h. The terms "records," "documents," and "materials" include all information recorded in any form, visual or aural, and by any means, such as electrical, electronic or magnetic form (including, but not limited to, tape recordings, compact discs, hard disks, CD-ROMs, digital video disks (DVDs), Multi Media Cards (MMCs), memory sticks, optical disks, printer buffers, smart cards, or electronic notebooks, as well as digital data files from any magnetic, electrical or electronic storage device).

## BACKGROUND ON COMPUTERS, DIGITAL MEDIA & CHILD PORNOGRAPHY

6.     Based on my knowledge, training, and experience in child exploitation and child pornography investigations, computers, computer technology, other digital electronic storage devices, and the Internet have revolutionized the manner in which individuals seek to access and exploit children, as well as their ability to produce, distribute, and collect child pornography.  Moreover, with the advancement of so-called "smart" mobile phones, which perform the same functions, and often employ the same programs, as computers, users are able to transport, conceal, and have almost constant

access to the Internet.  Smart phones also enable consistent and real-time communication over a number of electronic, audio, and video platforms.

7.     Computers and other digital electronic media basically serve five functions in the realm of child pornography and child exploitation: production, communication, distribution, storage, and social networking.

8.     Child pornographers can transpose photographic images from a film camera into a computer-readable format with a scanner.  With digital cameras, the images can be transferred directly onto a computer and/or other digital media.  A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Through the Internet and use of social media applications, such as Facebook, electronic contact can be made to literally millions of computers around the world.

9.     The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The storage size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.  These drives can store thousands of images at very high resolution.  In addition, electronic devices such as smart phones (e.g., Apple iPhones), connected devices (e.g., Apple iTouch), e-readers, and tablets (e.g., Apple iPads, Kindle Fire) now function essentially as computers with the same abilities to store images and videos in digital form.

10.      The Internet affords collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

11.      Collectors and distributors of child pornography also use online resources to retrieve and store child pornography, including services offered by Internet portals such as Yahoo! and Hotmail, among others.  The online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer or device with access to the Internet. Evidence of such online storage of child pornography is often found on the user's computer or device. Even in cases where online storage is used, in most cases evidence of child pornography can be found on the user's computer or device.

12.      As with most digital technology, communications made from a computer are often saved or stored on that computer.  Storing this information can be intentional, for example, by saving an email as a file on the computer or saving the location of one's favorite websites in "bookmarked" files.  Digital information can also be retained unintentionally.  Traces of the path of an electronic communication may be automatically stored in many places, such as temporary files or ISP client software, among others.  In addition to electronic communications, a computer user's Internet activities generally leave traces in a computer's web cache and Internet history files. Computer files or remnants of such files can be recovered months or even years after

7

they have been downloaded onto a hard drive, deleted, or viewed via the Internet.
Electronic files downloaded to a hard drive can be stored for years at little or no cost.
Even when such files have been deleted, they can be recovered months or years later
using readily available forensic tools.  When a person "deletes" a file on a home
computer, the data contained in the file does not actually disappear; rather, that data
remains on the hard drive until it is overwritten by new data.  Therefore, deleted files,
or remnants of deleted files, may reside in free space or slack space – that is, in space on
the hard drive that is not allocated to an active file or that is unused after a file has been
allocated to a set block of storage space – for long periods of time before they are
overwritten. In addition, a computer's operating system may also keep a record of
deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via
the Internet are automatically downloaded into a temporary Internet directory or
"cache." The browser typically maintains a fixed amount of hard drive space devoted to
these files, and the files are only overwritten as they are replaced with more recently
viewed Internet pages.  Thus, the ability to retrieve residue of an electronic file from a
hard drive depends less on when the file was downloaded or viewed than on a
particular user's operating system, storage capacity, and computer habits.

13.     Because the attempted enticement and coercion of minors is illegal, as is
the production, receipt, distribution, and possession of child pornography, individuals
who seek sexual gratification from the exploitation of children must be cautious about
their communications and online activity.  An individual can use the computer or other

8

digital electronic media in the privacy of his/her own home or office to locate and

interact with other like-minded individuals, including individuals trading in child

pornography.  Moreover, an individual can do so without revealing his/her true

identity.  The use of computers and other digital electronic media devices provide

individuals interested in child exploitation with a convenient method of storing their

communications, information about the others with whom they communicate, and their

child pornography collections.

14.     Searches and seizures of evidence from smart phones, computers, and

other digital devices commonly require agents to download or copy information from

the device to be processed later by a qualified computer expert in a laboratory or other

controlled environment.  This is almost always true because of the following three

reasons:

a.  Computers, smart phones and computer storage devices (like hard
    disks, diskettes, tapes, laser disks, magnetic opticals, and others) can
    store the equivalent of thousands of pages of information.  When the
    user wants to conceal criminal evidence, he or she often stores it in
    random order with deceptive file names.  This requires searching
    authorities to examine all the stored data that is available in order to
    determine whether it is included in the warrant that authorizes the
    search.  This sorting process can take days or weeks, depending on the
    volume of data stored, and is generally difficult to accomplish on-site.

b.  Searching digital devices for criminal evidence is a highly technical
    process requiring expert skill and a properly controlled environment.
    The vast array of available hardware and software available requires
    even computer experts to specialize in some systems and applications,
    so it is difficult to know before a search which expert should analyze
    the system and its data.

9

c. The search of a computer system, and other digital devices, is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since this evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

15. When identifying material containing child pornography, one means that files can be identified and matched is through what is called a "hash value." Using a complicated algorithm, the hash value of a file can be displayed as a series of hexadecimal characters. One common format for this is the MD5 (Message Digest) hash, which contains 32 characters. The number of combinations of these characters is so vast that the hash analysis is millions of times more accurate than DNA or fingerprinting. If a change is made to even one pixel in an image, the hash value will change completely. Changing the name or file extension will not change the hash value. If two files share the same MD5 hash file, they are the same file.

16. I have conducted numerous investigations related to the possession, production, and distribution of child pornography. At least a dozen of these investigations involved the suspects of those investigations producing and/or possessing child pornography on their cell phone. I am aware that mobile devices, such as tablets, laptops, and cell phones, are portable, capable of being stored or left in a vehicle, and have the capability to access the Internet. Furthermore, I have conducted

numerous investigations involving Facebook wherein a suspect searches for minors to

contact, communicates with minors to produce or send files containing child

pornography, or communicates with users who use Facebook as a platform to send files

containing child pornography to each other or share communications about other

platforms used for sharing such material.

**Internet Protocol Address**

17.     The Internet is a worldwide system of computer networks - a network of

networks - in which users at any one computer can, if they have permission, get

information from any other computer (and sometimes talk directly to other computer

users).

18.     An Internet Protocol address (also known as an IP address) is a set of

numbers which identify a computer on the Internet.  Standard IPV4 IP addresses follow

the format of ###.###.###.###1  wherein each of the numbers are between 0 and 255.

Computers use IP addresses to identify each other on the Internet. IP addresses are

registered to specific individuals or entities, such as an Internet service provider.

19.     When a subscriber of an Internet service provider wishes to access the

Internet via their service, the Internet service provider will assign that account an IP

address which identifies that account holder on the Internet.  By providing the Internet

service provider with the dates, times and IP addresses which a suspect used to access

the Internet, the Internet service provider will be able to provide the identifying

---

1       As set in the protocol TCP/IP V4 which is the common usage today.

information for the account holder who was assigned that specific IP address at that date and time, if the records still exist on their system.

## BACKGROUND OF INVESTIGATION AND PROBABLE CAUSE

20.     On November 5, 2010, offender Harold WILLIAMS was sentenced to 120 months incarceration by the Honorable Michael M. Mihm, U.S. District Judge, in Peoria, Illinois, for Receipt of Child Pornography. Upon release, he was ordered to serve a lifetime of supervised release.

21.     On April 4, 2011, offender WILLIAMS was sentenced to six years in the Illinois Department of Corrections for Aggravated Criminal Sexual Abuse in Peoria County 09-CF-1077.

22.     On or about January 8, 2019, offender Williams was released from Bureau of Prisons custody and commenced his term of supervised release in the Central District of Illinois.

23.     In March 2019, two different reports were taken by Pekin Police Department and Tazewell County Sheriff's Office by third-party witnesses who stated they believed WILLAMS was accessing and using two distinct different Facebook accounts while being a registered sex offender.  The report taken by Pekin Police Department contained statements by a witness who reported that WILLIAMS told him that he favored hanging out at the Boys and Girls Club in Pekin, Illinois.

24.     On April 26, 2019, when I was made aware of the two profiles listed above (10033492069190 and 100032613398806), I issued a Preservation Order to Facebook to

preserve these accounts.  These Facebook profiles are no longer viewable on the

Facebook site as of September 17, 2019, when I attempted to use open source Internet to

search for them. However, Facebook maintained records for these accounts, which were

subject to search warrants by both the U.S. Secret Service and Pekin Police Department

in concurrent investigations.

25.     On April 8, 2019, officers from the U.S. Probation Office conducted an

inspection at WILLIAMS' residence. Three devices, a desktop tower computer, an

external hard drive, and a cellular phone, were discovered to be under WILLIAMS'

control. These were unauthorized devices, based upon the terms of his supervised

release, as they had not been reported to the U.S. Probation Office or had filtering

software installed.

26.     Based upon the violations of the terms of WILLIAMS' supervised release

and the USPO's search authority, two of the devices, the external hard drive and the

desktop computer tower's hard drive, were examined by U.S. Probation Officer James

Cour.

27.     Steven Holmes, an investigator with the U.S. Probation Office in the

Eastern District of Missouri, examined the phone. Holmes reported seeing two

Facebook accounts on WILLIAMS's cell phone, both with the name Harold WILLIAMS.

One had user account ID Number 100032613398806, and the other had Facebook user

account ID Number 100033492069190. Holmes reported that, with the phone not

connected to the Internet, he observed the phone's Internet history. Among the list of

sites visited, he noted such titles as "Gay teen videos," "A boy cries and moans as his

h…," "young boys threesome," "twinks boys video gay porn," and "4 boys in gay teen

sex orgy." Holmes also reported that within the Gmail application, he observed

numerous folders, but the folders would not open due to a lack of Internet connectivity.

28.     Holmes reported that he examined the Facebook Messenger application

and found that the profile with a Sesame Street character profile picture was active

(Facebook user account ID 10033492069190). Holmes located "numerous" pictures of

young-looking males displaying their nude genitals, and that these pictures had been

sent to WILLIAMS's device on April 2, 2019 from an account with the name Karim

Esam. Holmes believed that three of these images met the federal definition for child

pornography, and having reviewed his descriptions, agree they likely constitute child

pornography.

29.     On or about July 17, 2019, with Special Agent Shane Hornibrook of the

U.S. Secret Service, I met with Officer Kelly McConkey at the U.S. Probation Office. I

viewed some of the images found on WILLIAMS' devices. In my training and

experience, two of these images appeared to meet the federal definition for child

pornography, as defined in 18 U.S.C. § 2256. Each image depicted a nude prepubescent

male displaying his genitals, with his erect penis as the focal point of the image.

30.     On August 1, 2019, I obtained federal search warrant 19-MJ-06078,

authorizing the search of these three devices.

31.     Beginning on August 9, 2019, during a preliminary examination of WILLIAMS's cell phone, computer, and external hard drive, I located 22 video files and 6 image files containing depictions of child pornography, as defined in 18 U.S.C. § 2256, using hash values as a means of determining that the files are not duplicates.  On the computer, I located instances of access to Facebook from this device and indications that sexually explicit materials were being traded.

32.     The presence of child pornography on his devices, messages on his Facebook account that referenced exchanging pictures of a sexual nature, and the images observed in WILLIAMS's Facebook Messenger application by Holmes, indicate a likelihood that WILLIAMS exchanged images of child pornography using Facebook and/or Facebook Messenger as a medium for either trading the material itself or communications with other users about where to seek out such material.

33.     On September 26, 2019, I executed federal search warrant 19-MJ-6091, which provided data from three Facebook accounts controlled by WILLIAMS. In data from account number 100033492069190, I located a conversation with a specific account that was, due to the context of the conversation and explicit mention of ages, believed to belong to a 16-year-old male (hereinafter referred to as MV1).  Based on the user's profile name and information in the chat between MV1 and WILLIAMS, MV1 was identified and confirmed to be a 16 year old minor male residing in Massachusetts, verified by SA John Mazza of the U.S. Secret Service during an interview with MV1 on January 2, 2019.

15

34.     In reviewing the chat conversation that took place over two weeks, between MV1 and WILLIAMS, shortly after the two become "friends" on Facebook, the chats became sexually explicit. Among other messages, WILLIAMS sent the following (listed on page 4657 of the search warrant results):

> a. February 7, 2019, at 0415 UTC: "I would most Def. (sic) eat your ass out for sure though"
>
> b. February 7, 2019, at 0414 hours: "If I fucked you and busted my nut up in your ass, I would get done between your legs eat it back out of you and SNOWBAL (sic) it back in your mouth if you wanted it!"

35.     On age 4720 of the search warrant results for the listed Facebook account, on February 13, 2019, at 1921 hours UTC, WILLIAMS stated, "I cant (sic) get into my Facebook right now on dads (sic) phone. But I can chat with you for a bit". Six minutes later, WILLIAMS sent the following message: "Sounds like a great day for us to spend together in bed while no one is home."

36.     During the chat conversation between MV1 and WILLIAMS, WILLIAMS requests sexually explicit photographs and videos from MV1.  MV1 states that he is 16 years old and WILLIAMS acknowledges his age several times by asking how school went, his high school play, and WILLIAMS discusses their age difference.  During the course of the chat, at WILLIAMS' request, MV1 sends both image and video files of his

nude penis to WILLIAMS through Facebook Messenger.  WILLIAMS responds by discussing the files and requesting MV1 produce more image or video files for him.

37.     Upon identification of MV1 by USSS SA Mazza from the Springfield, MA office, MV1 was interviewed and confirmed that Facebook profile was him and no one else used his Facebook profile.  SA Mazza and assisting officers from the Holyoke, MA Police Department took images of the bedroom and bathroom of MV1's home and confirm the backgrounds of the sexually explicit photos sent to WILLIAMS matched.

38.     In her complaint for a State of Illinois search warrant, Officer Palmer of the Pekin, Illinois Police Department indicated that she conducted a simultaneous review of the listed Facebook account (100033492069190) based upon a tip from the National Center for Missing and Exploited Children (NCMEC). This review showed an associated phone number of 309-241-8654. She found that this number is associated with the sex offender registry information for WILLIAMS' father, Verlyn Williams (this data is publicly available on the Illinois State Police sex offender registry website). Officer Palmer also found, within information included with a National Center for Missing and Exploited Children (NCMEC) tip, subpoena results from Sprint for the same phone number, 309-241-8654.

39.     Sprint is the cell phone provider for the phone number listed above, which is attached to the Verlyn Williams sex offender registry information. A subpoena sent to Sprint shows that the subscriber for this phone, 309-241-8654, is listed as Verlyn Williams, residing at 60 Rainbow Drive in Pekin, Illinois. Further information from the

subpoena results shows an email address of VERLYNWILLIAMS2@SPRINTPCS.COM, and an Electronic Serial Number (ESN) of 089568154302427010. Agents note that a review of the Verlyn Williams sex offender registry information indicated that he (Verlyn Williams) did not report an email address for the entire 2019 year.

40.     Therefore I have reason to believe, and do believe, that WILLIAMS used the SUBJECT DEVICE (with a cell phone number of 309-241-8654), belonging to his father, during his communication with a 16-year-old minor male, and that while using the SUBJECT DEVICE, WILLIAMS solicited and received messages containing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) and employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C. § 2251 (sexual exploitation of a minor).

41.     I further believe that due to WILLIAMS not reporting to his U.S. Probation Officer or to the Illinois Sex Offender Registry any social media presence and that he also had several unregistered devices capable of accessing the internet during the April 8, 2019 search by U. S. Probation, that it is likely WILLIAMS was attempting to hide his online conduct by using his father's phone to access the internet.  I request this search warrant to seize and search the SUBJECT DEVICE based on a belief that it will contain evidence as described above as it relates to MV1, but also evidence of other internet activity relating to the violations of possession of child pornography and sexual exploitation of minors.  I further request and seek that this warrant authorizes the entire

18

search of the phone to determine information such as user attributes, which could

include images, videos, contacts, messages, phone calls, and internet activity.

## CONCLUSION

42.     Based on the above information, there is probable cause to believe that the

items described in ATTACHMENT B are presently contained within the SUBJECT

DEVICE (as set forth and depicted in ATTACHMENT A), believed to be in the

possession of Verlyn Williams, a registered sex offender; and that these items constitute

contraband, evidence, fruits, and instrumentalities, as well as property designed for use

in committing a crime, and namely violations of 18 U.S.C. § 2252A(a)(5)(B) (possession

of child pornography) and 18 U.S.C. § 2251 (sexual exploitation of a minor).

Accordingly, I respectfully request that the Court authorize the seizure of the listed

SUBJECT DEVICE and the seizure of the contraband, evidence, fruits, and

instrumentalities of the above violations of federal law.

s/Scott Gamboe

SCOTT GAMBOE
Special Federal Officer
United States Secret Service


Sworn and subscribed to me telephonically pursuant to Fed. R. Crim. P. 41(d)(3)
and Rule 4.1 this _____ day of January, 2020 at _____ (Central Standard Time).

s/Jonathan E. Hawley

HONORABLE JONATHAN HAWLEY
UNITED STATES MAGISTRATE JUDGE
CENTRAL DISTRICT OF ILLINOIS

**ATTACHMENT A**
**DESCRIPTION OF LOCATION TO BE SEARCHED**

The SUBJECT DEVICE is described as a cellular phone carrying a phone number

of 309-241-8654, and an ESN of 089568154302427010.

1

**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

1.      Evidence identifying individual(s) who used, owned, or controlled the electronic device(s) and computer(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, videos, and Internet Service Provider accounts.

2.      Any and all notes, documents, records, computer files or correspondence, in any format and medium (including, but not limited to, email messages, chat logs and electronic messages) pertaining to 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography), including communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography or membership in online groups, clubs, or services that provide or make accessible child pornography to members.

3.      Any and all records, documents, invoices and materials, in any format or medium (including, but not limited to, email messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

4.      Any and all notes, documents, records, computer files or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages) pertaining to the enticement, coercion, or sexual exploitation of minors, including communications between individuals about trafficking of materials that constitute child pornography, grooming children, engaging in sexually explicit

conduct with children,  ads on websites seeking sexual contact with children, or the existence of sites on the Internet that cater to those with an interest in child exploitation.